# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 20, 2014          Decided April 24, 2015

No. 13-7171

YASSER ABBAS,
APPELLANT

v.

FOREIGN POLICY GROUP, LLC AND JONATHAN SCHANZER,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01565)

*Louis G. Adolfsen* argued the cause for appellant. With him on the briefs was *S. Dwight Stephens*.

*Kevin T. Baine* argued the cause for appellees. With him on the brief were *Adam R. Tarosky*, *James M. McDonald*, *Nathan E. Siegel*, *Seth D. Berlin*, and *Shaina J. Ward*.

*Irvin B. Nathan*, Attorney General, Office of the Attorney General for the District of Columbia, *Ariel B. Levinson-Waldman*, Senior Counsel to the Attorney General, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Rebecca P. Kohn*, Assistant Attorney General, were on the brief for the District of Columbia as

2

*amicus curiae* in support of the District of Columbia Anti-SLAPP Act's applicability in federal diversity cases.

*Laura R. Handman*, *Alison Schary*, *Thomas R. Burke*, *Richard A. Bernstein*, *Kevin M. Goldberg*, *Karen Kaiser*, *Jonathan Bloom*, *Randy L. Shapiro*, *Jonathan D. Hart*, *Mark H. Jackson*, *Jason P. Conti*, *Jacob P. Goldstein*, *Oscar Grut*, *David Giles*, *Susan E. Seager*, *Barbara W. Wall*, *Jonathan Donnellan*, *Kristina Findikyan*, *Karole Morgan-Prager*, *Juan Cornejo*, *Sandra S. Baron*, *Kathleen A. Hirce*, *Charles D. Tobin*, *Mickey H. Osterreicher*, *Greg Lewis*, *Denise Leary*, *Ashley Messenger*, *Susan Weiner*, *David E. McCraw*, *Mark H. Jackson*, *Kurt Wimmer*, *Richard J. Tofel*, *Bruce D. Brown*, *Gregg P. Leslie*, *Gail Gove*, *Bruce W. Sanford*, *Laurie A. Babinski*, *Karen H. Flax*, *Julie Xanders*, *Ed Lazarus*, *John B. Kennedy*, and *James A. McLauglin* were on the brief for *amici curiae* Media Organizations in support of appellees.

Before: KAVANAUGH and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Yasser Abbas is the son of current Palestinian leader Mahmoud Abbas. In 2012, the Foreign Policy Group published an article on its website about Yasser Abbas and his brother Tarek. At the outset, the article asked two questions: "Are the sons of the Palestinian president growing rich off their father's system?" and "Have they enriched themselves at the expense of regular Palestinians – and even U.S. taxpayers?"

In response to the questions posed in the article, Yasser Abbas filed suit in the U.S. District Court for the District of

Columbia against the Foreign Policy Group and the article's author, Jonathan Schanzer. Abbas alleged defamation under D.C. law. But the D.C. Anti-Strategic Lawsuits Against Public Participation Act of 2010 (known as the Anti-SLAPP Act) requires courts, upon motion by the defendant, to dismiss defamation lawsuits that target political or public advocacy, unless the plaintiff can show a likelihood of success on the merits. Applying the D.C. Anti-SLAPP Act, the District Court dismissed Abbas's defamation complaint.

Abbas now appeals. He contends that a federal court exercising diversity jurisdiction may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision. In Abbas's view, the D.C. provision makes it easier for defendants to obtain dismissal of a case before trial than the more plaintiff-friendly standards in Rules 12 and 56 of the Federal Rules of Civil Procedure. Citing the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), Abbas says we must follow the Federal Rules, not the D.C. Anti-SLAPP Act, in this federal court proceeding. We agree with Abbas on that point. But we affirm the District Court's judgment on an alternative ground: Under Federal Rule 12(b)(6), Abbas's allegations do not suffice to make out a defamation claim under D.C. law.

I

A

Many States have enacted anti-SLAPP statutes to give more breathing space for free speech about contentious public issues. Those statutes "try to decrease the 'chilling effect' of certain kinds of libel litigation and other speech-restrictive litigation." Eugene Volokh, *The First Amendment and Related Statutes* 118 (5th ed. 2014). The statutes generally

accomplish that objective by making it easier to dismiss defamation suits at an early stage of the litigation.

Like the various States' anti-SLAPP laws, the D.C. Anti-SLAPP Act makes it easier for defendants sued for defamation and related torts to obtain quick dismissal of harassing lawsuits. The D.C. Council passed the Act in 2010 in response to what the Council described as an upsurge in "lawsuits filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view." Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 18-893, at 1 (Nov. 18, 2010).

Under the Act as relevant here, a defendant may file a special motion to dismiss "any claim arising from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(a). To obtain dismissal, the defendant first must make a "prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." *Id.* § 16-5502(b). If the defendant makes that prima facie showing, then the plaintiff must demonstrate that "the claim is likely to succeed on the merits." *Id.* If the plaintiff makes that showing, the defendant's special motion to dismiss must be denied. Otherwise, the special motion to dismiss must be granted. *See id.* (As we will see, that likelihood of success requirement is important to this case.) While a special motion to dismiss is pending, discovery is stayed except for limited purposes. *Id.* § 16-5502(c). A defendant who prevails on a special motion to dismiss may recover the costs of litigation, including reasonable attorney's fees. *Id.* § 16-5504(a).

B

Yasser Abbas is the son of Palestinian leader Mahmoud Abbas and is a businessman with substantial commercial interests in the Middle East. Yasser Abbas and his brother Tarek were featured in "The Brothers Abbas," an article by Jonathan Schanzer published by Foreign Policy Group on its website.

Schanzer's article addresses the Abbas brothers' wealth and its possible sources. The article's subtitle poses a question: "Are the sons of the Palestinian president growing rich off their father's system?" The first paragraph asks a similar question: "Have they enriched themselves at the expense of regular Palestinians – and even U.S. taxpayers?"

The article recounts allegations of corruption that a former economic advisor to Yasir Arafat made against Mahmoud Abbas. It then describes the "conspicuous wealth" of Yasser and Tarek Abbas. Noting that the brothers' success "has become a source of quiet controversy in Palestinian society," the article describes their credentials and business ventures in some detail. In discussing Yasser Abbas, the article acknowledges that the "president's son is certainly entitled to do business in the Palestinian territories. But the question is whether his lineage is his most important credential – a concern bolstered by the fact that he has occasionally served in an official capacity for the Palestinian Authority." Finally, the article notes that "the Abbas brothers have largely dropped out of sight," but that Palestinians continue to whisper about the source of the brothers' success.

In response to the article, Yasser Abbas filed a D.C.-law defamation suit in the U.S. District Court for the District of Columbia against the Foreign Policy Group and Schanzer.

Abbas's defamation claims rest on the two questions posed at the outset of the article. *See* Compl. ¶¶ 46-94.

The Foreign Policy Group and Schanzer moved to dismiss the complaint under the special motion to dismiss provision of the D.C. Anti-SLAPP Act. They also moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the defendants' special motion to dismiss under the D.C. Anti-SLAPP Act, dismissed Abbas's complaint with prejudice, and denied the defendants' Rule 12(b)(6) motion as moot. *Abbas v. Foreign Policy Group, LLC*, 975 F. Supp. 2d 1, 20 (D.D.C. 2013). Abbas promptly appealed.

II

The first issue before the Court is whether a federal court exercising diversity jurisdiction may apply the D.C. Anti-SLAPP Act's special motion to dismiss provision. The answer is no. Federal Rules of Civil Procedure 12 and 56 establish the standards for granting pre-trial judgment to defendants in cases in federal court. A federal court must apply those Federal Rules instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision.

A

A federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure "answer[s] the same question" as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398-99 (2010) (majority

opinion) (citing *Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965)).[1]

For the category of cases that it covers, the D.C. Anti-SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial – namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits. But Federal Rules of Civil Procedure 12 and 56 "answer the same question" about the circumstances under which a court must dismiss a case before trial. And those Federal Rules answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits.[2]

That difference matters. Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP Act, the plaintiff is *not* able to get to trial just by meeting those Rules 12 and 56 standards. The D.C. Anti-SLAPP Act, in other words, conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial.

In particular, under Federal Rule 12(b)(6), a plaintiff can overcome a motion to dismiss by simply alleging facts

---

[1] In *Shady Grove*, Parts I and II-A of Justice Scalia's opinion commanded a majority of the Court. Those sections govern our analysis of whether a federal rule answers the same question as a state law.

[2] Although D.C. is not a state, *Shady Grove*'s two-part framework applies to federal court cases involving a local D.C. law. *See Burke v. Air Serv International, Inc.*, 685 F.3d 1102, 1107-08 (D.C. Cir. 2012).

sufficient to state a claim that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Id.* at 556. If the complaint survives a motion to dismiss, a defendant may still move before trial for summary judgment under Rule 56. But Rule 56 permits summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rules 12 and 56 help form "an integrated program" for determining whether to grant pre-trial judgment in cases in federal court. *Makaeff v. Trump University, LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring); *see also Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (Rules 12 and 56 "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court.").

In short, unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal. Under *Shady Grove*, therefore, we may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision.

To avoid that conclusion, the defendants in this case advance four basic arguments.

*First*, the defendants try to portray the D.C. Anti-SLAPP Act's special motion to dismiss provision as functionally identical to Federal Rule 56's summary judgment test. They creatively argue that the D.C. Anti-SLAPP Act's likelihood of success standard is just another way of describing the federal test for summary judgment. As they see it, the D.C. Anti-

SLAPP Act therefore does not conflict with the Federal Rules' comprehensive scheme for testing the sufficiency of a complaint. And they further say that state rules that answer the same question *in the same way* as the Federal Rules are not preempted under *Shady Grove*. Therefore, in their view, the D.C. Anti-SLAPP Act, taken as a whole, does not alter the standard for pre-trial dismissal or summary judgment, but simply layers a right to attorney's fees in this category of cases on top of the existing federal procedural scheme. *See* D.C. Code § 16-5504 (D.C. Anti-SLAPP Act attorney's fees provision).

The main problem with the defendants' theory is that it requires the Court to re-write the special motion to dismiss provision. Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so. But the D.C. Council instead enacted a new provision that answers the same question about the circumstances under which a court must grant pre-trial judgment to defendants. Moreover, the D.C. Court of Appeals has never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56. Put simply, the D.C. Anti-SLAPP Act's likelihood of success standard is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56.[3]

---

[3] An interesting issue could arise if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56. Would it still be preempted under *Shady Grove*? As defendants' argument suggests, the answer to that question could matter for attorney's fees and the like. But we need not address that hypothetical here because, as we have explained, the D.C Anti-SLAPP Act's dismissal standard does not exactly mirror Federal Rules 12 and 56.

*Second*, the defendants suggest that the special motion to dismiss provision embodies a substantive D.C. right not found in the Federal Rules – a form of qualified immunity shielding participants in public debate from tort liability.

Qualified immunity heightens the substantive showing a plaintiff must make in order to hold a defendant liable. To over-simplify for present purposes, qualified immunity allows defendants to avoid liability even when they may have violated the law so long as they acted reasonably. Qualified immunity (on its own) does not tell a court what showing is necessary at the motion to dismiss or summary judgment stages in order to dismiss a case before trial. Rather, Federal Rules 12 and 56 do that. The D.C. Anti-SLAPP Act, to use the words of the D.C. Court of Appeals, establishes a new "procedural mechanism" for dismissing certain cases before trial. *Doe No. 1 v. Burke*, 91 A.3d 1031, 1036 (D.C. 2014). And it differs from those Federal Rules.

*Third*, the defendants briefly point to the Private Securities Litigation Reform Act of 1995, which modified the pleading standards applicable in certain categories of securities cases. Pub. L. No. 104-67, 109 Stat. 737 (1995). They cite that Act as evidence that Federal Rules 12 and 56 do not foreclose the application of other pleading standards. But Congress, unlike the States or the District of Columbia, "has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit – either by directly amending the rule or by enacting a separate statute overriding it in certain instances." *Shady Grove*, 559 U.S. at 400 (majority opinion). Congress's decision to enact a heightened pleading standard for a small subset of federal question cases does not change the fact that Rules 12 and 56 otherwise "apply generally." *Id.*

*Fourth*, the defendants cite some other courts that have applied State anti-SLAPP acts' pretrial dismissal provisions notwithstanding Federal Rules 12 and 56. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 81, 92 (1st Cir. 2010); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999); *see generally* Charles Alan Wright et al., 19 *Federal Practice & Procedure* § 4509 (2d ed. 2014). That is true, but we agree with Judge Kozinski and Judge Watford that those decisions are ultimately not persuasive. *See Makaeff*, 736 F.3d at 1188 (Watford, J., dissenting from denial of rehearing en banc) ("California's anti-SLAPP statute impermissibly supplements the Federal Rules' criteria for pre-trial dismissal of an action."); *Makaeff*, 715 F.3d at 275 (Kozinski, J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules.").

In short, Federal Rules 12 and 56 answer the same question as the Anti-SLAPP Act's special motion to dismiss provision. Under *Shady Grove*, Rules 12 and 56 therefore govern in diversity cases in federal court, unless Rules 12 and 56 violate the Rules Enabling Act.[4] We turn now to that question.

B

The Rules Enabling Act empowers the Supreme Court to "prescribe general rules of practice and procedure and rules of evidence" for cases in the lower federal courts. 28 U.S.C. § 2072(a). A Federal Rule of Civil Procedure violates the

---

[4] Of course, the Federal Rule of Civil Procedure in question would not govern if the Rule was unconstitutional in some respect. There is no suggestion of unconstitutionality in this case.

Rules Enabling Act if it abridges, enlarges, or modifies any substantive right. *See id.* § 2072(b). So far, the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 407 (2010) (plurality opinion of Scalia, J.). We need not take a long time here to explain that Federal Rules 12 and 56 are valid under the Rules Enabling Act.

In *Shady Grove*, the Supreme Court considered whether the Rule at issue there, Rule 23 of the Federal Rules of Civil Procedure, violated the Rules Enabling Act. The Court issued no majority opinion on the test used to analyze whether a Rule violates the Rules Enabling Act. Justice Scalia wrote an opinion for four Justices, and Justice Stevens wrote an opinion for only himself. The other four Justices did not directly address that issue.

Justice Scalia's plurality opinion for four Justices strictly followed a prior Supreme Court precedent, *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941). *See Shady Grove*, 559 U.S. at 407-10 (plurality opinion). In *Sibbach*, the Supreme Court held that the test for whether a Federal Rule violates the Rules Enabling Act is whether that Rule "really regulates procedure" – that is, really regulates "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach*, 312 U.S. at 14; *see Hanna v. Plumer*, 380 U.S. 460, 464, 470-71 (1965) (applying *Sibbach* test). By contrast to Justice Scalia's plurality opinion for four Justices, Justice Stevens's opinion in *Shady Grove* would have distinguished and limited *Sibbach*. *See Shady Grove*, 559 U.S. at 427-28 (Stevens, J., concurring in part and concurring in the judgment); *cf. id.* at 412 (plurality opinion)

("In reality, the concurrence seeks not to apply *Sibbach*, but to overrule it (or, what is the same, to rewrite it).").

So four Justices adopted one formulation. One Justice adopted a different formulation. And four Justices did not address the question. What should we do in the face of such an unresolved 4-1 disagreement? Neither the 4-Justice view nor the 1-Justice view on its own is binding in these unusual circumstances. Moreover, neither opinion can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue. *See generally Marks v. United States*, 430 U.S. 188 (1977); *cf. United States v. Duvall*, 740 F.3d 604, 609-11 (D.C. Cir. 2013) (Kavanaugh, J., concurring). In addition, on the precise question before us – whether the governing standard is still the *Sibbach* standard of "really regulates procedure" or instead something else – no common conclusion was articulated by the 4-Justice opinion and the 1-Justice opinion. Therefore, the answer for us, in these particular circumstances, is to follow the Supreme Court's pre-existing precedent in *Sibbach*. Unless and until the Supreme Court overrules or narrows its decision in *Sibbach*, that case remains good law and is binding on lower courts.

The *Sibbach* test is very simple to apply here. Under *Sibbach*, any federal rule that "really regulates procedure" is valid under the Rules Enabling Act. *Sibbach*, 312 U.S. at 14; *see also Shady Grove*, 559 U.S. at 410 (plurality opinion) (quoting that statement from *Sibbach*); *Hanna*, 380 U.S. at 464 (same). As the Supreme Court indicated in *Shady Grove* (in a portion of the opinion that spoke for a majority), pleading standards and rules governing motions for summary judgment are procedural. *See Shady Grove*, 559 U.S. at 404 (majority opinion) (pleading standards and rules governing summary judgment are rules "addressed to procedure"). It

follows that Rules 12 and 56 are valid under the Rules Enabling Act.

In sum, Federal Rules 12 and 56 answer the same question as the D.C. Anti-SLAPP Act, and those Federal Rules are valid under the Rules Enabling Act. A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision.[5]

## III

That conclusion does not end this appeal. The Court may affirm a district court judgment on "any ground the record supports" and that the "opposing party had a fair opportunity to address." *Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009) (internal quotation marks omitted); *see Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post*, 959 F.2d 288, 292 n.3 (D.C. Cir. 1992).

During the District Court proceedings, in addition to their motion to dismiss under the D.C. Anti-SLAPP Act, the defendants also filed a motion to dismiss Abbas's complaint under Federal Rule 12(b)(6). In their Rule 12(b)(6) motion, the defendants argued that the complaint failed to state a claim under D.C. defamation law. The parties fully briefed that motion, but the District Court denied it as moot after

---

[5] After granting or denying a special motion to dismiss under the Anti-SLAPP Act, a court may grant attorney's fees and costs to the prevailing party. *See* D.C. Code § 16-5504. The Act does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6). Therefore, although we conclude that the case should be dismissed under Rule 12(b)(6), attorney's fees under the Anti-SLAPP Act are not available to the defendants in this case.

15

granting the defendants' Anti-SLAPP Act special motion to dismiss. *Abbas v. Foreign Policy Group, LLC*, 975 F. Supp. 2d 1, 20 (D.D.C. 2013). As appellees in this court, the defendants have renewed their Rule 12(b)(6) arguments, and both parties have briefed the issue. We agree with the defendants that Rule 12(b)(6) requires dismissal of Abbas's complaint.

Dismissal under Rule 12(b)(6) is proper when a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claims "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To establish liability for defamation under D.C. law, Abbas must show, among other things, that the defendants made a false and defamatory statement about him. *See Doe No. 1 v. Burke*, 91 A.3d 1031, 1044 (D.C. 2014).[6]

In this case, however, Abbas's defamation claim focuses not on statements made in the article but rather on two

---

[6] To determine which jurisdiction's laws govern Abbas's defamation claim, we apply the choice-of-law rules of the jurisdiction in which we sit. *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014). D.C.'s choice-of-law rules "require that we apply the tort law of the jurisdiction that has the most significant relationship to the dispute." *Id.* (internal quotation marks omitted). That inquiry "requires that we consider where the injury occurred, where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship is centered." *Id.* (internal quotation marks omitted). In his complaint, Abbas alleges that the conduct that caused his injury took place in the District of Columbia. The defendants agree that D.C. law should govern. The parties relied on D.C. defamation law in briefing this appeal. We conclude that D.C. defamation law governs this dispute.

questions posed in the article: "Are the sons of the Palestinian president growing rich off their father's system?" and "Have they enriched themselves at the expense of regular Palestinians – and even U.S. taxpayers?"

Those questions are not factual representations. The article does not say, for example, that the "sons of the Palestinian president are growing rich off their father's system" and "have enriched themselves at the expense of regular Palestinians and U.S. taxpayers."

Although the D.C. courts have not confronted the issue of whether questions can be defamatory, it is generally settled as a matter of defamation law in other jurisdictions that a question, "however embarrassing or unpleasant to its subject, is not accusation." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993). Questions indicate a defendant's "lack of definitive knowledge about the issue." *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995).[7]

For that reason, posing questions has rarely given rise to successful defamation claims in other jurisdictions. *See, e.g.*, *id.*; *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 195-96 (8th Cir. 1994); *Chapin*, 993 F.2d at 1094; *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 729-31 (1st Cir. 1992); 1 Robert D. Sack, *Sack on Defamation* § 2:4.8 (4th ed.

---

[7] To be sure, as Judge Sack notes and as case law bears out, questions that contain embedded factual assertions may sometimes form the basis for a successful defamation claim. *See* 1 Robert D. Sack, *Sack on Defamation* § 2:4.8 (4th ed. 2010) (quoting *Chapin*, 993 F.2d at 1094). For example, a question such as "Given that Jones repeatedly abused children, why is he still employed by the school district?" contains a factual assertion that Jones abused children. But that is not what we have here.

2010). As Judge Sack's treatise cogently explains, albeit in a slightly different context, whether a question can give rise to a successful defamation claim "is significant. Reporters routinely and necessarily ask questions in order to obtain information, and the mere asking of a question may cast a shadow on the reputation of a person about whom the question is asked. But a genuine effort to obtain information cannot be defamatory. A contrary rule would render legitimate reporting impossible." 1 *Sack on Defamation* § 2:4.8. Questions can be posed to explore, to inquire, to prompt further inquiry, to frame discussion, to initiate analysis, and the like. But questions are questions.

As a federal court exercising diversity jurisdiction and applying the general tenets of D.C. defamation law, we here follow the widely adopted defamation principle that questions are questions. After all, just imagine the severe infringement on free speech that would ensue in the alternative universe envisioned by Abbas. Is the Mayor a thief? Is the quarterback a cheater? Did the Governor accept bribes? Did the CEO pay her taxes? Did the baseball star take steroids? Questions like that appear all the time in news reports and on blogs, in tweets and on cable shows. And all such questions could be actionable under Abbas's novel defamation theory. But D.C. law has not previously extended defamation liability to those kinds of questions.

Of course, some commentators and journalists use questions – such as the classic "Is the President a crook?" – as tools to raise doubts (sometimes unfairly) about a person's activities or character while simultaneously avoiding defamation liability. After all, a question's wording or tone or context sometimes may be read as *implying* the writer's answer to that question. But to make out a defamation by implication claim even in cases involving affirmative

statements, D.C. law requires an "especially rigorous showing." *Guilford Transportation Industries, Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000) (quoting *Chapin*, 993 F.2d at 1092-93). And Abbas has not cited any D.C. case allowing a defamation by implication claim based on mere questions. The reason for the absence of such D.C. case law seems evident. There is no good or predictable way to neatly divide (i) the questions that are routinely posed in America's robust public forums from (ii) the kinds of questions that would be actionable as defamation by implication under Abbas's theory. Abbas's theory would thus necessarily ensnare a substantial amount of speech that is essential to the marketplace of ideas and would dramatically chill the freedom of speech in the District of Columbia. We will not usher D.C. law down such a new and uncertain road.

In short, the questions posed in the article at issue in this case do not suffice for Abbas to make out a defamation claim under D.C. law. The defendants are therefore entitled to dismissal of Abbas's defamation claim under Rule 12(b)(6).[8]

IV

Applying the Anti-SLAPP Act, the District Court dismissed Abbas's complaint with prejudice. Although we have relied on alternative grounds to affirm the dismissal, we likewise conclude that dismissal should be with prejudice. Dismissal with prejudice is warranted when "the allegation of

---

[8] The defendants offer other bases for dismissal under Rule 12(b)(6). They allege that Abbas is a public figure and that he failed to demonstrate actual malice in his complaint. They also claim that the District of Columbia's fair comment privilege protects the defendants from liability. Having already decided in the defendants' favor on other grounds, we need not reach those alternative arguments.

other facts consistent with the challenged pleading could not possibly cure the deficiency." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (internal quotation marks omitted); *cf. Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 132-33 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (dismissal under Rule 12(b)(6) is ordinarily dismissal with prejudice, unless district court in its discretion states otherwise). Abbas's complaint relies exclusively on two questions in one article. We have held that those questions, as a matter of law, do not qualify as false and defamatory statements under D.C. law. Therefore, dismissal with prejudice is appropriate.

\* \* \*

The District Court dismissed Abbas's complaint with prejudice. We affirm the judgment of the District Court.

*So ordered.*