But the Ollman factors do not point in Ms. Roller's favor as strongly as she suggests. Ms. Roller's argument about the first Ollman factor depends on the mistaken assumption that it is impossible to make a clear statement about an ambiguous gesture.[8] A simple illustration shows the flaw in this logic: People wave in greeting and in parting, but the ambiguity of the gesture does not make the sentence "she waved goodbye" ambiguous or indefinite. Ms. Roller's argument about the second Ollman factor relies almost entirely on analogies to statements in other cases about plaintiffs' views or attitudes but does not address the fact that views and attitudes are subjective realities while physical gestures are objective realities.[9] Her argument about the third Ollman factor suggests that readers would not infer false facts from her tweet but does not address whether her tweet makes a false factual statement directly. And her argument about the fourth Ollman factor notes that society generally has low expectations of political debates on Twitter but does not address society's expectations of journalistic conduct on Twitter.
One can imagine situations in which a defendant's characterization of a plaintiff's gesture would be arguably defamatory. For example, a defendant might claim that the plaintiff "flipped me off" when the evidence showed the plaintiff actually gave a thumbs-up, or a defendant might claim that the plaintiff performed the Nazi salute when the plaintiff merely waved hello. These demonstrably false factual statements would differ from related, but protected, statements of opinion such as, "She is a vulgar person," or "He is a Nazi-lover." Cf. Buckley v. Littell , 539 F.2d 882, 893-94 (2d Cir. 1976) (distinguishing the *92 factual allegation that a plaintiff was a member of the Communist Party from the statement of opinion that plaintiff is "a fellow traveler of fascism"); Smith v. Sch. Dist. of Phila. , 112 F.Supp.2d 417, 429 (E.D. Pa. 2000) (holding that general accusations of being "racist and anti-Semitic" state opinion and not fact). While the allegation that Ms. Fairbanks displayed a "white power gesture" is arguably more ambiguous than an allegation that the plaintiff flipped someone off or performed the Nazi salute, this ambiguity is not clearly fatal to her suit against Ms. Roller.
"While courts [of different jurisdictions] are divided in their methods of distinguishing between assertions of fact and expressions of opinion, they are universally agreed that the task is a difficult one." Ollman , 750 F.2d at 978. "Where the question of truth or falsity is a close one, a court should err on the side of nonactionability." Liberty Lobby , 838 F.2d at 1292. But since actual malice presents a clearer question and requires dismissal of the case, I need not decide whether Ms. Roller's tweet constitutes a protected statement of opinion.
B.
The First Amendment requires public figures suing in defamation to establish by clear and convincing evidence that the defendant's fault rises to the level of "actual malice." Liberty Lobby , 838 F.2d at 1292. That is, public figures must establish that the defendant made the allegedly defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." Sullivan , 376 U.S. at 280, 84 S.Ct. 710. Because free debate inevitably leads to some mistaken statements and punishment of these statements would chill the freedom of speech, reckless disregard requires a "high degree of awareness of ... probable falsity." Garrison v. La. , 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). "The actual malice inquiry focuses on the defendant's state of mind at the time of publication." Kahl v. Bureau of Nat'l Affairs, Inc. , 856 F.3d 106, 118 (D.C. Cir. 2017).
Ms. Fairbanks seeks to prove actual malice in four ways. First, she alleges that Ms. Roller knew the "okay" symbol is not a white power gesture. Pl.'s Opp. to Mot. Dismiss 11. Second, she alleges that Ms. Roller failed to perform due diligence consistent with professional standards of journalism. Id. Third, she alleges that Ms. Roller, as a gatekeeper journalist, has a motive to smear Ms. Fairbanks' reputation as a competing grassroots journalist and "continues a campaign of smears." Id. at 11-12; see also Am. Compl. 2. Fourth, she argues that Ms. Roller's "failure to issue a single correction or retraction" suggests her recklessness about truth. Pl.'s Opp. to Mot. Dismiss 11; but see Am. Compl. ¶ 17 (implying that Ms. Roller deleted her tweet); Compl. 2 (alleging that Ms. Roller deleted her tweet before learning of this lawsuit).
None of these arguments comes close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions. Ms. Fairbanks' first argument fails because she has not pled facts sufficient to support her conclusory allegation that Ms. Roller knew the falsity of her statement.[10] Her second and third *93 arguments fail because, even "an extreme departure from professional standards" coupled with an illicit motive does not satisfy the actual malice standard. Harte-Hanks Commc'ns, Inc. v. Connaughton , 491 U.S. 657, 665, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ; see also Parsi v. Daioleslam , 890 F.Supp.2d 77, 81 (D.D.C. 2012) ("Subjective ill-will does not establish actual malice, nor does a malevolent motive for publication. Even highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers does not establish actual malice.") (internal citation omitted). And her fourth argument fails because Ms. Roller's failure to correct her statement does not show that she had actual malice when she published it. See Kahl , 856 F.3d at 118 (requiring evidence of actual malice at the time of publication); see also Lohrenz v. Donnelly , 223 F.Supp.2d 25, 56 (D.D.C. 2002) ("[T]here is no duty to retract or correct a publication ...."). Especially given the public debate about the "okay" hand gesture at the time of Ms. Roller's tweet, Ms. Fairbanks' allegations do not provide clear and convincing evidence of actual malice. Indeed, the inescapable conclusion one reaches upon viewing the photo and tweets at issue (including Ms. Fairbanks' tweets) is that Ms. Fairbanks intended her photo and hand gesture to provoke, or troll, people like Ms. Roller-whether because the gesture was actually offensive or because they would think that it was offensive-not that Ms. Fairbanks was the victim of a malicious attack based on innocent actions. So Ms. Fairbanks has failed to state a claim and her case should be dismissed.
C.
Dismissing the Amended Complaint for failure to state a claim does not moot Ms. Roller's anti-SLAPP motion since the motion seeks attorneys' fees in addition to dismissal. The District of Columbia's anti-SLAPP statute seeks to protect people from "Strategic Lawsuits Against Public Participation" or SLAPPs-that is, from illegitimate lawsuits designed to discourage free speech on issues of public interest. See Abbas v. Foreign Policy Grp. , 783 F.3d 1328, 1332 (D.C. Cir. 2015). Among other things, the statute establishes a mechanism for early dismissal of SLAPPs and enables defendants who win dismissal under the statute to recover their attorneys' fees. D.C. Code §§ 16-5502(a) - (b), 16-5504(a). But Ms. Fairbanks argues that the anti-SLAPP statute does not properly apply in federal courts exercising diversity jurisdiction over local law claims.
A federal court sitting in diversity generally applies local substantive law and federal procedural rules. Hanna v. Plumer , 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (citing Erie R.R. Co. v. Tompkins , 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ). If local substantive law and the Federal Rules of Civil Procedure answer the same question in different ways, the Federal Rules of Civil Procedure control unless they exceed the authorization of the Rules Enabling Act. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co. , 559 U.S. 393, 398-99, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010). The United States Court of Appeals for the District of Columbia Circuit has already determined under this framework that "[a] federal *94 court exercising diversity jurisdiction ... must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision." Abbas , 783 F.3d at 1337. And it has determined that this holding prevents an award of attorneys' fees under the anti-SLAPP statute since the relevant provision requires a defendant to invoke the special motion to dismiss provision successfully. See id. at 1337 n.5 (citing D.C. Code § 16-5504(a) ).
Ms. Roller argues that the District of Columbia Court of Appeals' subsequent decision in Competitive Enterprise Institute v. Mann , 150 A.3d 1213 (D.C. 2016), supersedes Abbas . She notes that Mann clarified two facts about the District's anti-SLAPP statute that differ from the understanding in Abbas . Memo. ISO Anti-SLAPP Mot. 5. First, Mann held that the anti-SLAPP statute creates substantive rights. Mann , 150 A.3d at 1226. Second, it held that the statute's "likely to succeed" standard of proof for special motions to dismiss mirrors the summary judgment standard of proof under Federal Rule of Civil Procedure 56. Id. at 1238 n.32.
Mann 's articulation of District law-and not Abbas 's interpretation of it-controls. See Payne v. D.C. Gov. , 722 F.3d 345, 353 (D.C. Cir. 2013) (noting that District of Columbia Court of Appeals decisions provide binding interpretations of District law). But I am also bound to follow Abbas as the law of the Circuit unless Mann "clearly and unmistakably" resolves the question at issue. See Easaw v. Newport , 253 F.Supp.3d 22, 34 (D.D.C. 2017). Two of my colleagues have already determined that Abbas remains binding after Mann . See Libre by Nexus v. Buzzfeed, Inc. , 311 F.Supp.3d 149, 160, 2018 WL 2248420 at *9 (D.D.C. May 16, 2018) ; Deripaska v. Associated Press , 2017 WL 8896059 at *3 (D.D.C. Oct. 17, 2017). Indeed, I am not aware that any judge in this District has awarded attorneys' fees under the anti-SLAPP statute since Mann .
Because Abbas 's application of the Shady Grove framework does not depend on either of the points that Mann later clarified, I join my colleagues in concluding that Abbas controls. The reasoning in Abbas begins with the observation that the anti-SLAPP statute and Federal Rules of Civil Procedure 12 and 56"answer the same question about the circumstances under which a court must dismiss a case before trial." Abbas , 783 F.3d at 1333-34. Mann does nothing to disturb this understanding of District law.
Abbas goes on to observe that the anti-SLAPP statute and the Federal Rules of Civil Procedure answer the same question in different ways: "[U]nlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal." Id. at 1334. And Mann confirms this conclusion. As Ms. Roller notes, Mann clarifies that the anti-SLAPP statute's "likelihood of success on the merits" standard mirrors the Rule 56 summary judgment standard, requiring that "the evidence suffices to permit a jury to find for the plaintiff."[11] Mann , 150 A.3d at 1238 n.32. But like a mirror, the anti-SLAPP statute reverses the image that it reflects: Mann agrees with Abbas that the statute differs from Rule 56 by requiring the plaintiff to show a likelihood of success on the merits instead of placing the burden on the defendant. Id. And Mann adds that the statute's dismissal standard differs from Rule 12 by requiring the plaintiff to *95 produce evidence rather than allowing the plaintiff to rely on the allegations in her complaint. Id. at 1233 ; see also Libre by Nexus , 311 F.Supp.3d at 160, 2018 WL 2248420 at *9. In short, Mann does not align the District's anti-SLAPP statute with the Federal Rules. Instead, it expressly states that the statute "is not redundant relative to the rules of civil procedure." Mann , 150 A.3d at 1238.
The final question that Abbas addressed under the Shady Grove framework is whether Federal Rules of Civil Procedure 12 and 56 exceed the authorization of the Rules Enabling Act. See Shady Grove , 559 U.S. at 398, 130 S.Ct. 1431. Abbas held that Rules 12 and 56 do not. Abbas , 783 F.3d at 1336-37. As a local court, Mann had no occasion to explore the validity of the Federal Rules. Thus, Mann does not undermine Abbas in this respect either.
According to Ms. Roller, " Mann could not have spoken more 'clearly and unmistakably' to ... whether the standards imposed by [the anti-SLAPP statute] are the same or different than those imposed by the Federal Rules of Civil Procedure." Memo. ISO Anti-SLAPP Mot. 5. I believe it "clearly and unmistakably" confirms Abbas 's determination that they differ. In any event, it does not show that the anti-SLAPP statute should apply in federal court. So I am bound by the law of the Circuit and must dismiss Ms. Roller's anti-SLAPP motion.
IV.
Some countries criminalize gestures that others may take as racist or hateful. See, e.g. , Strafgesetzbuch (StGB) (Penal Code), § 130, http://www.gesetze-im-internet.de/englisch_stgb/englisch_stgb.html#p0080 (German law criminalizing incitement to hatred against certain groups, which has been used to prosecute individuals who perform the Nazi salute); Code Pénal [C.Pén] art. 144 (Belgian law criminalizing the use of actions, words, gestures, or threats to insult religious objects). But in America, the First Amendment's commitment to a public debate that is "uninhibited, robust, and wide-open," Sullivan , 376 U.S. at 270, 84 S.Ct. 710, offers broad protections to those who make these gestures and those who accuse public figures of making them.
For the reasons explained above, the Defendant's Motion to Dismiss under the Federal Rules of Civil Procedure will be granted and the Defendant's Motion to Dismiss under the District of Columbia anti-SLAPP statute will be denied. A separate order will issue.

Ms. Roller cites McCaskill v. Gallaudet University for the proposition that where "different constituencies can hold different-and completely plausible-views of Plaintiff's actions, statements characterizing those actions constitute protected opinion."36 F.Supp.3d 145, 159 (D.D.C. 2014). But Ms. Roller herself notes that this rule pertains to a statement's verifiability, not to its clarity. Memo. ISO Mot. Dismiss 10. And McCaskill addressed the verifiability of plausible characterizations. Here, Ms. Roller's argument about the gesture's ambiguity declines to address plausibility, expressly "setting aside whether it has a political meaning." Id. at 10.

Ms. Roller draws this distinction herself, asking me not to treat her statement about Ms. Fairbanks' gesture as a statement about her personal beliefs. Id. at 13. But neither party has briefed the issue well, and Ms. Roller's interpretation of the gesture's meaning involves at least somewhat more subjectivity than a simple description of the physical gesture. The only case that the parties cite for its treatment of a statement characterizing a Plaintiff's conduct is McCaskill , a district court decision holding that a plausible characterization of ambiguous conduct was not falsifiable. See McCaskill , 36 F.Supp.3d at 159.

Ms. Fairbanks alleges, "Roller knew at the time of her publishing that Fairbanks was a long-time civil rights writer, journalist, and advocate, who backed Donald Trump's candidacy for the Presidency only also after protesting civil rights violations against a wide range of citizens, including women and African-Americans, and after Fairbanks had previously backed Bernie Sanders's presidential bid. Roller knew Fairbanks was not using 'white power' signals before she published her false stories on April 28, 2017." Am. Compl. ¶ 11. But the second sentence is conclusory and the first fails to provide a "clear and convincing" basis for finding that Ms. Roller knew the "okay" gesture does not symbolize white power. See Liberty Lobby , 838 F.2d at 1292.

Ms. Roller's other observation-that Mann clarified the substantive nature of the anti-SLAPP statute-confirms that the Shady Grove framework applies and does not alter how. See Memo. ISO Anti-SLAPP Mot. 5.