# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-5178**

**September Term, 2023**

FILED ON: JULY 24, 2024

GULSHAN KARIMOVA,
> APPELLANT

v.

KATHRYN ABATE, CONSUL, U.S. EMBASSY IN GEORGIA,
> APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02433)

Before:  HENDERSON, MILLETT, and PILLARD, *Circuit Judges*

## <u>J U D G M E N T</u>

This case was considered on the record and on the briefs and oral arguments of the parties. The panel has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d).  It is

**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be **AFFIRMED**.

## I

Gulshana Karimova asks this court to order the consular officer who oversaw her visa application to adjudicate it conclusively.  But she has not adequately alleged that the consular officer has such a duty to act.  So we affirm the district court's dismissal of her complaint.

# A

## 1

District courts can compel agency action only in the "extraordinary" case when they find the official committed a "transparent violation[] of a clear duty to act" and has "unreasonably delayed the contemplated action." *In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotation marks omitted). Courts may remedy such violations by issuing a writ of mandamus. *See* 28 U.S.C. § 1361. Alternatively, courts can order relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), which authorizes orders to "compel agency action unlawfully withheld or unreasonably delayed[.]" Those two paths to compulsory relief share a common threshold: The court may act "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).

## 2

Federal law governs visa eligibility. *See, e.g.*, 8 U.S.C. § 1182(a) ("[A]liens who are inadmissible * * * are ineligible to receive visas and ineligible to be admitted to the United States[.]"). The applicant bears the burden of proving eligibility. *Id.* § 1361. Consular officers may issue a visa to "an immigrant who has made [a] proper application" demonstrating eligibility. *Id.* § 1201(a)(1)(A). They cannot issue a visa, however, when "it appears to the consular officer" that the applicant "is ineligible to receive a visa[.]" *Id.* § 1201(g).

Visa applicants "make" or "execute" their application by bringing the required paperwork to an in-person interview with a consular officer. 9 Foreign Affairs Manual ("FAM") § 504.1-3(a), (g).[1] The consular officer's decision to refuse or grant the application is based on that interview and the application materials. *Id.* § 504.1-3(f). As relevant here, once the applicant properly applies, the consular officer—by regulation—"*must* issue" or "refuse" the visa. 22 C.F.R. § 42.81(a) (emphasis added); *see* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). Consular officers "cannot temporarily refuse, suspend, or hold the visa for future action" at that point. 9 FAM § 504.1-3(g); *id.* § 504.9-2. There are no exceptions to this rule relevant to this case. *Id.* § 504.1-3(i)(1); *id.* § 504.11-2(A)(a).[2]

So any applicant "to whom a visa is not issued by the end of the working day on which the

---

[1] The Foreign Affairs Manual "articulates" the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5; *see* 18 FAM § 201.1-1(B).

[2] The regulation also allows consular officers to "discontinue granting the visa" when there is "an outstanding order" under the Immigration and Nationality Act's Section 1253(d). 22 C.F.R. § 42.81; *see* 8 U.S.C. § 1253(d). Section 1253(d) allows the Secretary of State to order consular officers to "discontinue granting immigrant visas" from specified countries during certain diplomatic disputes. 8 U.S.C. § 1253(d). There is no such outstanding order in this case.

application is made, or by the end of the next working day * * * must be found ineligible[.]"  9 FAM § 504.1-3(i)(1); *id.* § 504.11-2(A)(a).  The "requirement to find an applicant ineligible when a visa is not issued applies even when" more information might show the applicant to be eligible. *Id.* § 504.1-3(i)(1).  "There is no such thing as an informal refusal or a pending case once a formal application has been made." *Id.* § 504.1-3(i); *id.* § 504.11-2(A)(b); *see* 22 C.F.R. § 42.81(a).

After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change.  As a result, the consular officer may choose to place an officially refused application in administrative processing. Such an applicant cannot come into the United States since the consular officer has refused to issue her a visa.  But that refusal may (or may not) be overcome with new information at a later date. *See* 9 FAM § 306.2-2(A)(a).  If the consular officer gets enough new information, sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. *Id.* § 306.2-2(A)(a)(2).  Unless and until that happens, though, the visa application remains officially refused.  Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects.

**B**

Gulshana Karimova is a citizen and resident of Azerbaijan.  She has been seeking an immigrant visa to enter the United States since at least October 2019.  J.A. 27.

A consular officer reviewed Karimova's application and interviewed her at the United States Embassy in Georgia in 2020.  The officer officially "refused" her application.  J.A. 53; J.A. 88. The officer then placed her application in "administrative processing in order to verify qualifications for [her requested] visa."  J.A. 88.  The status of Karimova's application remains refused, even though the consular officer chose to leave it in administrative processing in case something changes Karimova's eligibility.

About a year after her interview, Karimova filed suit in federal district court.  She alleged that the consular officer in charge of adjudicating her immigrant visa application had "breached [her] duty * * * to make a final decision" on Karimova's application "within a reasonable time."  J.A. 29–30 (capitalization modified).  Karimova rooted the asserted duty to act on her visa in Section 555(b) of the Administrative Procedure Act.  J.A. 30.  She alleged that the consul's duty "is not discharged by a refusal * * * due to administrative processing, because that is not a final decision" on the visa application.  J.A. 30 (quotation marks omitted).  Invoking both the Administrative Procedure Act and the Mandamus Act, Karimova asked the court to "compel" the consular officer to perform her duty to finally adjudicate her visa.  J.A. 31.[3]

---

[3] Karimova sued along with several other plaintiffs who raised similar claims.  But those plaintiffs have either consented to the dismissal of all their claims, J.A. 96, or have not appealed, *see* Karimova Opening Br. 1.  For her part, Karimova consented to the dismissal of every claim but the one she now raises on appeal.  J.A. 96.

3

The government moved to dismiss her claim on the grounds that courts cannot review consular actions on visa applications, and that, in any event, there had not been unreasonable delay in processing Karimova's application.

The district court granted the government's motion to dismiss. *Quiros v. Amador*, No. 21-cv-02433, 2023 WL 4364161, at *9 (D.D.C. July 6, 2023). We affirm.

**II**

The district court had jurisdiction under 28 U.S.C. § 1331. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003). We have jurisdiction under 28 U.S.C. § 1291.

We review the district court's decision to dismiss *de novo*. *Western Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240 (D.C. Cir. 2018). We can affirm the district court's judgment "on any ground the record supports" as long as Karimova "had a fair opportunity to address" it. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) (quotation marks omitted).

**III**

Karimova's appeal centers on her claim that the consular officer "owe[d]" her a "duty" to make a "final decision" on her visa application. J.A. 30. By "final decision," she means that the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing. The district court properly dismissed that claim because Karimova has not identified any law "plainly prescrib[ing]" that the consular officer not put an officially refused visa application in administrative processing. *Interstate Commerce Comm. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932). To obtain a writ of mandamus, the petitioner must show, among other things, that the agency has violated "a crystal-clear legal duty." *In re Center for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *In re National Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Similarly, to make out a claim of agency inaction under Section 706 of the APA, the plaintiff must "identify a legally required, discrete act that the [agency] has failed to perform[.]" *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (discussing this "threshold requirement for a § 706 failure-to-act claim").

Karimova has made neither showing.

Karimova relies on Section 555(b) of the APA as the source of the consular officer's alleged duty to act. That Section is an "[a]ncillary" provision stating that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time[.]" 5 U.S.C. § 555(b). Karimova argues that Section 555(b)—and *only* Section 555(b)—"places a clear, non-discretionary duty" on her consular officer to re-adjudicate her already-refused application and, this time, to do it without

subsequently retaining the application in case circumstances change in her favor. Karimova Reply Br. 1; J.A. 29–30.

Section 555(b) does no such thing. That provision simply expresses "a congressional view that agencies should act within reasonable time frames[.]" *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see* Attorney General's Manual on the Administrative Procedure Act 65 (1947) (referring to an earlier version of Section 555(b) as "merely restat[ing] a principle of good administration"). Its non-specific directive to all agencies to "proceed to conclude a matter" within a "reasonable time" and with "due regard" to the parties leaves officials ample room for judgment based on the circumstances. 5 U.S.C. § 555(b). It does not "plainly define[,]" *Knable v. Wilson*, 570 F.2d 957, 960 (D.C. Cir. 1977) (quotation marks omitted), and place upon consular officers a "crystal-clear legal duty" after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing, *In re Center for Biological Diversity*, 53 F.4th at 670 (quotation marks omitted).

Section 555(b)'s generality and indistinctness are particularly acute problems for Karimova due to the nature of her claim.

First, our starting point is that consular officers have broad discretion when adjudicating visa applications. *See Department of State v. Muñoz*, No. 23-334, slip op. at 6 (U.S. June 21, 2024) ("Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'") (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–591 (1952)); *id.* at 7, 11; *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (It is "not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.") (quotation marks omitted). Nothing in Section 555(b)'s statement of general, good-governance principles alters that baseline.

Second, Karimova's "matter" has already been "conclude[d.]" 5 U.S.C. § 555(b). Karimova acknowledges that her application was considered by the consular officer and officially refused. Oral Arg. Tr. 5:2–8. A consular officer reviewed her application, interviewed her, and ruled that no visa would be granted. *Id.*; J.A. 53, 88.

Karimova's argument hinges on defining what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires. She received the "refused" decision that the law expressly authorizes as one of the allowed actions on a visa application. 22 C.F.R. § 42.81; *see* 8 U.S.C. § 1201(g). Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application.

In other words, even on Karimova's reading, Section 555(b) *at most* could have entitled her to the official refusal decision she already received. Section 555(b) does not in any way dictate how the agency can handle her rejected paperwork after a decision has been made.

Our decisions in *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003), and *In re American Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004), do not dictate otherwise.

In *Mashpee*, we held that the district court had federal-question jurisdiction under 28 U.S.C. § 1331 to decide whether the Bureau of Indian Affairs was violating Section 555(b) by taking too long to adjudicate a petition for tribal recognition. *Mashpee*, 336 F.3d at 1099–1100. On our way to that holding, we noted that the plaintiff's "claim arose under the Administrative Procedure Act, which imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed[.]'" *Id.* at 1099 (first quoting 5 U.S.C. § 555(b), and then quoting 5 U.S.C. § 706(1)). But that statement served only to show that the plaintiff's claim arose from a federal question for jurisdictional purposes. *Id.* at 1099–1100. We did not hold that Section 555(b) contained a "specific, unequivocal command" to act that would justify mandamus or Section 706(1) relief every time someone complained of delay. *Interstate Commerce Comm.*, 287 U.S. at 204.

We also decided *Mashpee* before the Supreme Court handed down *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). There, the Court made clear that mandamus and Section 706(1) relief are "limit[ed] to *required* agency action," which "rules out judicial direction of even discrete agency action that is not *demanded* by law[.]" *Id.* at 65 (second emphasis added). *Norton* underscores that Section 555(b) does not support compulsory relief here.

As for our decision in *American Rivers*, Karimova's case bears little resemblance to it. That case dealt with a run-of-the-mill administrative issue: A statute required one agency to coordinate with another agency on an environmental concern, and a regulation allowed the public to petition the first agency to do so. *In re American Rivers & Idaho Rivers United*, 372 F.3d at 415–418 & n.9. The first agency had not acted on one such petition, and its inaction was "thwart[ing]" the court's ability to review agency action. *Id.* at 419. Under those circumstances, that agency was "obligated under the APA to respond" to the petition, and the court could enforce that obligation through mandamus. *Id.* at 418–419 (citing 5 U.S.C. 555(b)) (emphasis omitted).

Karimova's claim is quite different. For one thing, the consular officer has already acted on her application. Unlike the FERC officials in *American Rivers*, the officer reviewing Karimova's application did not ignore it. She reviewed and then lawfully refused it. *Compare* Oral Arg. Tr. 5:2–8 (Karimova's counsel agreeing that Karimova's application was officially refused), *with In re American Rivers & Idaho Rivers United*, 372 F.3d at 418 (noting that the agency failed to take any action on petitioner's petition). Karimova's demand for a post-adjudication ban on holding her application administratively thus looks nothing like the request for initial action in *American Rivers*.

For another, Karimova's claim is not standard administrative fare. It arises within a field that is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of

foreign relations[ and] the war power[.]" *Harisiades*, 342 U.S. at 588–589 (1952); *see Goodluck v. Biden*, No. 21-5263, slip op. at 10 (D.C. Cir. June 25, 2024) (when it comes to judicial intervention in visa decisions, "[h]istorical and contextual considerations * * * warrant restraint"). Those types of claims generally fall outside the Judicial Branch's wheelhouse. *See Muñoz*, slip op. at 6 ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also United States* ex rel. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (Unless "expressly authorized by law," it is "not within the province of any court * * * to review the determination of the political branch of the Government to exclude a given alien."); *Goodluck*, slip op. at 11; *Saavedra Bruno*, 197 F.3d at 1160 (America's immigration laws "'preclude judicial review' of consular visa decisions.") (quoting 5 U.S.C. § 701(a)(1)). So while Section 555(b)'s good-governance practices may have spoken to "a crystal-clear legal duty" in *American Rivers*, they do not do so here. *In re Center for Biological Diversity*, 53 F.4th at 670 (quotation marks omitted).

Indeed, this court has already held that the Administrative Procedure Act's general applicability "runs aground" when it comes to consular visa decisions. *Saavedra Bruno*, 197 F.3d at 1162. As a result, we would not even be able to review the merits of the consular officer's decision if we ordered her to act. *Muñoz*, slip op. at 7 ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions."). *Contrast In re American Rivers & Idaho Rivers United*, 372 F.3d at 419 ("[T]he primary purpose of the writ in circumstances like these is to ensure that an agency does not thwart our jurisdiction by withholding a reviewable decision."). While we need not decide whether that principle of nonreviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision, that background principle of judicial abstinence underscores the absence of any clear command in law or precedent for the action Karimova seeks to compel. *Cf. Da Costa v. Immigration Inv'r Program Office*, 80 F.4th 330, 340 (D.C. Cir. 2023) (locating the United States Citizenship and Immigration Service's "nondiscretionary duty" to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)); *Meina Xie v. Kerry,* 780 F.3d 405, 405 (D.C. Cir. 2015) (similar).

* * *

Karimova sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application. Because Karimova has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.[4]

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for

---

[4] Karimova moved to strike a 28(j) letter filed by the government in this court related to administrative processing. Karimova Mot. 1–2. Because we do not rely on the government's letter in disposing of this case, we deny Karimova's motion as moot.

7

rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

## Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk