# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 11, 2023        Decided August 18, 2023

No. 22-5313

ADRIAN DA COSTA AND JAYDE DA COSTA,
APPELLANTS

v.

IMMIGRATION INVESTOR PROGRAM OFFICE AND UR M.
JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,
APPELLEES

Consolidated with 22-5320

Appeals from the United States District Court
for the District of Columbia
(No. 1:22-cv-01576)
(No. 1:22-cv-02171)

*Jesse M. Bless* argued the cause and filed the briefs for The
Da Costa Appellants.

*Brad Banias* argued the cause and filed the briefs for The
Bega Appellants.

*H. Ronald Klasko* was on the brief for *amicus curiae* Invest in the USA in support of The Da Costa Appellants.

*Matthew T. Galati* and *Halston A. Chavez* were on the brief for *amicus curiae* American Immigrant Investor Alliance in support of appellants.

*Aaron S. Goldsmith*, Senior Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Glenn M. Girdharry*, Deputy Director, and *Vanessa Molina*, Trial Attorney.

Before: HENDERSON, PILLARD and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:     Noncitizens can qualify for employment-based U.S. visas by investing in designated commercial enterprises that create jobs in the United States. After making a qualifying investment, a noncitizen must petition the United States Citizenship and Immigration Services (USCIS) for the visa. In these two consolidated appeals, investors who have waited several years for USCIS to approve their petitions sue the agency for what they see as unreasonably delayed action in violation of the Administrative Procedure Act. The district courts in both cases granted USCIS's motions to dismiss, holding that the investors' allegations do not show USCIS's delay to be unreasonable under the circumstances. We affirm.

## BACKGROUND

### A.

In 1990, Congress amended the Immigration and Nationality Act (INA or the Act), 8 U.S.C. § 1101 *et seq.*, to create an employment-based visa program for noncitizens who invest in a job-creating enterprise. Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978, 4989 (codified at 8 U.S.C. § 1153(b)(5)). (We use "noncitizen" as equivalent to the statutory term "alien." *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).) The job-creation visas are called "EB-5 visas" because they are the "fifth employment-based visa category available to foreign nationals." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020). EB-5 visas are available to noncitizens entering the country to engage in a new commercial enterprise that "will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals," or certain other residents. 8 U.S.C. § 1153(b)(5)(A)(ii).

Two years after creating the EB-5 program, Congress created an additional path to qualify for an EB-5 visa through what is now called the Regional Center Program. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992). Under the Regional Center Program, EB-5 petitioners "pool[] their investments with 1 or more qualified immigrants" into "a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment." 8 U.S.C. § 1153(b)(5)(E)(i).

4

The INA sets general parameters for the government's adjudication of visa petitions and issuance of visas. It provides that family-sponsored and employment-based visas "shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed." 8 U.S.C. § 1153(e)(1). We have referred to that statutory first-in, first-out directive as the "priority rule." *Meina Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015).

The INA also imposes statutory caps on the worldwide total number of all employment-based visas the government may grant annually. 8 U.S.C. § 1151(a), (d); *see Meina Xie*, 780 F.3d at 406. The Act limits the number of visas for particular subcategories within the broader category of employment-based visas (which, in addition to EB-5 job-creation visas, includes visas for workers with certain high levels of ability or qualification, or who meet needs unmet by workers available within the United States). 8 U.S.C. § 1153(b). EB-5 visas, for example, "shall be made available, in a number not to exceed 7.1 percent of" the overall maximum number of employment-based visas. *Id.* § 1153(b)(5)(A).

The INA also limits the number of visas that can be awarded to individuals from a single country. Generally, for "family-sponsored and employment-based immigrants" taken together, "the total number of immigrant visas made available to natives of any single foreign state . . . may not exceed 7 percent" of the total number of family-sponsored and employment-based visas made available in that fiscal year. *Id.* § 1152(a)(2); *see Meina Xie*, 780 F.3d at 406. We refer to that limit as the "per-country cap."

USCIS and the State Department have separate roles in processing visa applications and issuing visas. USCIS processes petitions, 8 C.F.R. §§ 100.1, 103.2, 106.1, while the

State Department tracks visa availability, allocates visas, and, for visa-seekers residing outside the United States, issues visas through its embassies and consulates worldwide to persons USCIS determines to be eligible. 22 C.F.R. §§ 42.41, 42.42, 42.51. The State Department publicly announces visa availability on an ongoing basis through its Visa Bulletins. 8 C.F.R. § 245.1(g)(1); Department of State, *The Visa Bulletin*, https://perma.cc/F2RW-BYPY (last updated June 1, 2023). We refer to the government generally unless we see a need to distinguish between those agencies.

## B.

For noncitizens seeking an EB-5 visa, the first step in the application process is to file with USCIS a petition, called a Form I-526, for classification as an approved investor. 8 C.F.R. § 204.6. The petition "must be accompanied by evidence that the [noncitizen] has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States which will create full-time positions for not fewer than 10 qualifying employees." 8 C.F.R. § 204.6(j). For noncitizens participating in the Regional Center Program, the evidence must show investment in a designated Regional Center and demonstrate— via "reasonable methodologies"—that the investment will either directly or indirectly create 10 or more jobs. *Id.* § 204.6(j)(4)(iii), (m)(7).

After USCIS approves a Form I-526 petition, the noncitizen proceeds to the second step: applying for conditional lawful permanent resident status. In other words, an approved petition makes the noncitizen "eligible to stand in line for an immigrant visa number to be issued by the Department of State." *See iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 61 (D.C. Cir. 2021) (describing equivalent process for

Form I-140 petition). Individuals living outside the United States apply for conditional lawful permanent resident status through a process called "consular processing." 8 U.S.C. §§ 1186b(a)(1), 1201-02; 8 C.F.R. § 216.1; 22 C.F.R. §§ 42.32(e), 42.41, 42.42; *see* USCIS, *Consular Processing*, https://perma.cc/9N3P-6X7S (last updated Aug. 7, 2023). Individuals already living in the United States apply through "adjustment of status." 8 U.S.C. §§ 1186b(a)(1), 1255; 8 C.F.R. §§ 216.1, 245.2. In a final step, after approximately one year and nine months as a conditional lawful permanent resident, the noncitizen may apply to remove the conditional basis of their lawful permanent resident status. 8 C.F.R. § 216.6(a)(1)(i).

This appeal concerns the first step of the EB-5 visa process: USCIS's adjudication of Form I-526s. In January 2020, USCIS announced a modification to its first-in, first out priority rule for that step, adopting what it calls the "visa availability approach*.*" USCIS, *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (Jan. 29, 2020), https://perma.cc/DUG5-ARPL (last updated June 5, 2023); Da Costa App. 16 (First Am. Compl. ¶¶ 71-73); Bega J.A. 12 (Compl. ¶ 63). In a question-and-answer format, USCIS explained that before the January 2020 change, it had relied on a simple first-in, first-out principle to adjudicate petitions, meaning that "generally USCIS processe[d] Form I-526 petitions in the order received." USCIS, *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, https://perma.cc/9P87-2J7G (last updated June 2, 2023). The announced amendment to that process sought to avoid delays caused by adhering to first-in, first-out processing of petitions from "oversubscribed" countries, *i.e.*, those that had already reached their visa limit under the relevant per-country cap. *Id.*; *see* 8 U.S.C. § 1152(a)(2). As USCIS explained, "the oldest Form I-526 petitions [were] primarily

from countries that [were] oversubscribed," such that, without the modification, "petitioners without visa numbers available would tend to be processed ahead of those with visa numbers available." USCIS, *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*. In the interest of efficiency, USCIS decided not to make people from countries with available visas wait for adjudication of earlier-filed petitions from oversubscribed countries, given that those earlier filers would remain unable to progress to the second step until a visa became available under the per-country cap.

As USCIS explained in the January 2020 press release, USCIS's visa-availability approach "gives priority to petitions where visas are immediately available" under the per-country cap. USCIS, *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*; *see* 8 U.S.C. § 1152(a)(2). Thus, USCIS continues to sequence adjudications according to the first-in, first-out principle, with the caveat that it "first process[es] petitions for investors for whom a visa is either now or soon will be available." USCIS, *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*. In other words, "[w]orkflows are generally managed in FIFO [first-in, first-out] order when a visa is available or will be available soon." *Id.* Because the USCIS approach involves an initial screening step for visa availability, and then processes petitions in first-in, first-out order, we refer to its approach as the "availability-screened queue."

In the question-and-answer sheet, USCIS set forth its rationales for its modified approach. *Id.* The agency stated that prioritizing petitions for individuals from countries with available visas improves consistency because it "aligns EB-5 processing with certain other USCIS operations and programs that involve numerical caps for visa availability (for example, preference category family visa petitions)." *Id.* The agency

also explained that an availability-screened queue would "align better with congressional intent for visa allocation" by accounting for the per-country caps, and that it would "increase fairness in the administration of the EB-5 immigrant investor program" by eliminating pointless delays. *Id.*

Based on USCIS data regarding processing times for the past several years, USCIS's processing of Form I-526 petitions has slowed considerably, even following the 2020 adoption of the availability-screened queue. USCIS tracks and publishes its median processing time for visa petitions. *See* USCIS, *Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year: Fiscal Year 2018 to 2023 (up to April 30, 2023)*, https://perma.cc/5WTA-DAN9 (last updated June 5, 2023). Its published data show that the median processing time for a Form I-526 decided in Fiscal Year (FY) 2018 was 17.9 months. The median time a petition decided in FY 2019 had been pending was 19.0 months; FY 2020, 31.1 months; FY 2021, 32.5 months; FY 2022, 44.2 months. And, as of April 30, 2023, the median time a petition decided this year had been pending was 49.4 months. *Id.* In other words, the data show increasingly slow adjudications, with a markedly increased lag by Fiscal Year 2020.

A nine-month gap in congressional authorization of the Regional Center Program likely contributed to delays in processing of those Form I-526 petitions that, like those at issue in this appeal, are based on Regional-Center investments. *See* Da Costa App. 16 (First Am. Compl. ¶¶ 65-70); Bega J.A. 22-24 (Compl. ¶¶ 128-37). Congress created the Regional Center Program in 1992 as a pilot program, Pub. L. No. 102-395, § 610, 106 Stat. at 1874, that it has periodically reauthorized, *see, e.g.*, Pub. L. No. 105-119, § 116, 111 Stat. 2440, 2467 (1997); Pub. L. No. 111-83, § 548, 123 Stat. 2142, 2177

(2009); Pub. L. No. 114-53, § 131, 129 Stat. 502, 509 (2015). A 2020 appropriations bill reauthorized the program, extending the visa set-aside period to June 30, 2021. Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Div. O., § 104, 134 Stat. 1182, 2148 (2020). But by the time that period expired, Congress had yet to reauthorize, causing a lapse from the end of June 2021 until March 2022, when Congress passed the EB-5 Reform and Integrity Act of 2022, extending authorization through September 2027. Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1075 (2022). During the nine-month gap in statutory authorization, USCIS paused adjudicating I-526 petitions. Da Costa App. 16 (First Am. Compl. ¶ 66); Bega J.A. 22 (Compl. ¶ 128).

## C.

Before us are two cases we consolidated on appeal: The Da Costa Plaintiffs and the Bega Plaintiffs separately sued USCIS, challenging its failure to act on their Form I-526 petitions. They claim violations of the Administrative Procedure Act, which requires an administrative agency to decide a matter presented to it "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," *id*. § 706(1). In reviewing the district courts' decisions to grant USCIS's motions to dismiss for failure to state a claim, we assume the truth of the facts alleged in the Da Costas' and Begas' complaints. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015).

Adrian DaCosta invested $500,000 in a USCIS-designated Regional Center called Otay Village 8 Lender, LLC, and based on that investment filed a Form I-526 on November 12, 2019, with his wife Jayde Da Costa as the derivative beneficiary. The Da Costas, who live in Durban, South Africa with their three

minor children, allege that USCIS has unreasonably delayed acting on their petition, even while their "health, lives, and safety are riding on" its outcome. Da Costa App. 18 (First Am. Compl. ¶ 86). They allege that Durban has experienced "prolonged periods [of] riots, lawlessness, and erosion of civil authority." Da Costa App. 17 (First Am. Compl. ¶ 79). Other problems there include "massive flooding" and inconsistent access to public services; "many" Durban residents cannot access "food, water, and shelter." Da Costa App. 17 (First Am. Compl. ¶ 81-85). Because of the challenges of life in Durban, the Da Costas allege, their "three minor children face immediate threats to health and safety and potential longer-term threats to education and development." Da Costa App. 27 (First Am. Compl. ¶ 147).

The four Begas, like the Da Costa couple, are EB-5 petitioners who challenged USCIS's failure to have adjudicated their Form I-526 petitions. Pierrot, Max, and Phillippe Bega are brothers, and Brian is Phillippe's adult son; all four are South African citizens and residents. They each invested at least $500,000 in programs administered by two Regional Centers. Pierrot filed his petition in April 2019, Max filed in May 2019, and Phillipe and Brian each filed in November 2019. The Begas allege that the delays in adjudicating their petitions introduce "unknown timelines and uncertainties" that "prevent them from planning, selling assets at opportune times, and making arrangements for their families." Bega J.A. 16 (Compl. ¶ 91). While this appeal was pending, USCIS approved Pierrot, Max, and Brian's Form I-526 petitions. *Bega v. Jaddou*, No. 22-5320, Doc. 1995660 (D.C. Cir. Apr. 20, 2023) (notice of administrative action), Doc. 2009838 (D.C. Cir. July 27, 2023) (notice of administrative action). Phillippe's petition remains pending.

11

**D.**

In each of the two consolidated actions, the district court entered judgment dismissing the case for failure to state a claim. Da Costa App. 129; Bega J.A. 106. Both courts analyzed the reasonableness of the timing of the agency's action by weighing the six factors we identified in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*), commonly called the "*TRAC* factors."

In *Da Costa v. Immigration Investor Program Office*, No. 22-cv-1576, 2022 WL 17173186 (D.D.C. Nov. 16, 2022), the district court held that two factors—"human health and welfare" and the "nature and extent of the interests prejudiced by delay"—favored the Da Costas, because of the challenges of living in Durban during the wait. *Id.* at *10. On balance, however, the district court concluded that the *TRAC* factors taken together favored the government. The USCIS's availability-screened queue was supported by an "identifiable rationale" that was "entirely justified in light of the agency's stated priorities." *Id.* at *8. Plaintiffs' allegation that USCIS does not follow its stated approach was "conclusory," and the three-year period plaintiffs had thus far had to wait was not "*per se* unreasonable." *Id.* at *9-10.

The district court in *Da Costa* placed the greatest emphasis on *TRAC* factor four: the effect that a ruling in plaintiffs' favor would have on the agency's competing priorities. *Id.* at *10. Granting relief to the Da Costas would require "directing the agency to divert resources away from other petitions of competing priority and bump Plaintiffs to the front of the line." *Id.* That factor, which the court explained "carries the greatest weight" in this context, "plainly militate[d] in favor of dismissal." *Id.* at *10-11. Because the government employed

a reasonable rationale without violating a statutory deadline or engaging in impropriety, and because ruling for the Da Costas would allow line jumping ahead of other eligible petitioners who had been waiting longer, the court concluded that Plaintiffs failed to state a claim of unreasonable delay. The court also dismissed claims, which the Da Costas do not press here, challenging USCIS's temporary pause in adjudicating Regional Center-based petitions during the gap in congressional authorization.

The district court in the second consolidated case, *Bega v. Jaddou*, No. 22-cv-2171, 2022 WL 17403123 (D.D.C. Dec. 2, 2022), reasoned similarly in dismissing the Bega Plaintiffs' claims. "Taken together," the court explained, "the *TRAC* factors at play here—USCIS's 'rule of reason' governing its adjudicatory process, the lack of statutory processing deadlines, the absence of any justification of expediting plaintiffs' petitions" ahead of others', and "the absence of allegations of harm to health or welfare—weigh heavily" in favor of the government and therefore the Plaintiffs do not state "a plausible unreasonable delay claim." *Id.* at *8.

The Da Costa and Bega Plaintiffs appeal.

## DISCUSSION

On *de novo* review, *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240-41 (D.C. Cir. 2018), we affirm the district courts' decisions to dismiss Plaintiffs' cases for failure to state a claim. The Plaintiffs have not stated a legally viable claim that USCIS unreasonably delayed adjudicating their I-526 petitions. Taking their allegations as true, we conclude that USCIS applies a "rule of reason" to adjudicate Form I-526 petitions, as required by *TRAC*, 750 F.2d at 80, and that the relief Plaintiffs seek would involve disfavored line-jumping by placing them ahead of other applicants who filed their Form

I-526 petitions even earlier, *see id*. While those two factors carry the greatest weight in our analysis, the absence of a statutory deadline and absence of plausible allegations of government misconduct also favor dismissing the claims.

**A.**

At the outset, we dismiss as moot the claims brought by Pierrot, Max, and Brian Bega. USCIS adjudicated and approved the Form I-526 petitions for those three Plaintiffs while this appeal was pending. *Bega v. Jaddou*, No. 22-5320, Doc. 1995660 (D.C. Cir. Apr. 20, 2023) (notice of administrative action), Doc. 2009838 (D.C. Cir. July 27, 2023) (notice of administrative action). Pierrot, Max, and Brian have thus received the adjudications they sought. *See* Bega J.A. 29 (Compl. ¶ 173). Because "an event occur[red] while a case [was] pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever'" to those plaintiffs even were they to prevail in the lawsuit, their claims are moot. *United States v. China Telecom (Ams.) Corp.*, 55 F.4th 939, 943 (D.C. Cir. 2022) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)); *see also Liu v. I.N.S.*, 274 F.3d 533, 536 (D.C. Cir. 2001). The claims of the other Bega Plaintiff, Phillippe, and those of the two Da Costa Plaintiffs, remain justiciable because their petitions have not yet been adjudicated.

**B.**

To state a claim for unreasonable delay, Plaintiffs must first allege that the agency "failed to take a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted), and, second, that the delay was unreasonable, *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020). Here, USCIS does not contest Plaintiffs' assertions of a

nondiscretionary duty on the part of the agency to adjudicate their Form I-526 petitions. USCIS Br. 24-32; *see Meina Xie*, 780 F.3d at 405-06, 408 (holding that plaintiff sufficiently pled a nondiscretionary duty, arising from 8 U.S.C. § 1153(e)(1), for the State Department to review her visa application). Our analysis therefore turns on whether the circumstances Plaintiffs allege, if proved, would show USCIS to have unreasonably delayed adjudicating the petitions.

As mentioned, to guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors. *See* 750 F.2d at 80. The two factors most important in this case are factor one—whether the agency's timing of adjudications follows a "rule of reason"—and factor four—the effect that an order "expediting delayed action" would have on "agency activities of a higher or competing priority." *Id.* We begin our analysis with those two factors.

**1.**

As for *TRAC* factor one, "the time agencies take to make decisions must be governed by a 'rule of reason.'" *Id.* (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983). In assessing whether an agency follows a rule of reason, we evaluate the length of the delay in light of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

We conclude that USCIS employs a rule of reason to adjudicate Form I-526 petitions. The government is statutorily required to issue visas in the order the petitions are filed, 8 U.S.C. § 1153(e)(1), and is also constrained by the per-country cap, *id.* § 1152(a)(2). USCIS's pre-2020 priority rule satisfied the bare order-of-filing requirement. *Id.* § 1153(e)(1). But, by

failing to also account for the caps, it led USCIS to expend agency resources to process earlier-filed petitions from oversubscribed countries ahead of those from countries with available visas, only for the former to sit in the oversubscribed country's visa line unable to move forward until a visa became available to them. In its question-and-answer document, USCIS explained that "the oldest Form I-526 petitions are primarily from countries that are now oversubscribed," so under a simple first-in, first-out process, "petitioners without visa numbers available would tend to be processed ahead of those with visa numbers available." USCIS, *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*. USCIS's availability-screened queue avoids that "hurry up and wait" anomaly. As we understand it, USCIS's rule of reason calls for processing Form I-526 petitions from nationals of countries as to which visas are currently available in the order in which those petitions were received.

As counsel for the Da Costas conceded at oral argument, the availability-screened queue "makes sense" and "[n]o one's disputing that." Oral Arg. Tr. 18. Plaintiffs nonetheless contend that the USCIS does not in practice follow a rule of reason. First, they allege that USCIS is not in practice following its official policy of screening for visa availability then adjudicating on a first-in, first-out basis. Da Costa App. 26, 28 (First Am. Compl. ¶¶ 144, 151); Bega J.A. 10, 12 (Compl. ¶¶ 51, 61, 63). Second, Plaintiffs allege that USCIS has granted "project-wide" out-of-order approvals, or "blanket expedites" to petitions associated with certain Regional Centers. Da Costa App. 28 (First Am. Compl. ¶ 150); Bega J.A. 11 (Compl. ¶ 53). Finally, the Da Costas contend that, even if USCIS is following its official visa availability policy, the length of time they have had to wait is "*per se* unreasonable." Da Costa App. 26 (First Am. Compl. ¶ 140).

Each of those three bases for impugning USCIS's rule of reason falls short. First, Plaintiffs do not plausibly allege that USCIS is not following its stated approach. Plaintiffs' theory is that USCIS is publicly announcing an availability-screened queue but applying a different, unannounced method. The Da Costa Plaintiffs contend that, because visas are available for South Africa, there is "no reasonable explanation why" USCIS has not yet adjudicated their petition. Da Costa App. 26 (First Am. Compl. ¶ 144). But those allegations do not account for the possibility—indeed, the likelihood—that earlier-filed petitions awaiting adjudication or processed ahead of theirs were also filed by nationals of countries that are not oversubscribed. In the same vein, Bega argues that USCIS has "no processing logic" for adjudication, and instead "systematically prioritizes later filed petitions over earlier filed petitions for Form I-526 petitions." Bega J.A. 10-11 (Compl. ¶¶ 52, 56). But USCIS does have a processing logic: Its stated policy is to prioritize earlier-filed ahead of later-filed petitions from any country as to which EB-5 visas are available. Bega offers no allegations from which we could reasonably infer that USCIS's announced approach is not a processing logic. Nor does he provide any substance for the allegation that USCIS "systematically prioritizes" later-filed petitions. Those conclusory assertions are insufficient to show that USCIS is not following its publicly stated policy.

Second, Plaintiffs' allegations that USCIS twice—in 2017 and at some point before 2015—unlawfully departed from the priority rule then in place does not support a reasonable inference that no rule of reason applies to the processing of Plaintiffs' petitions, which they filed in 2019. Bega alleges that, in 2015, the Department of Homeland Security's Inspector General reported an instance of interference by political appointees in the EB-5 petition adjudication process. Bega J.A. 27 (Compl. ¶ 155). He also alleges that, in 2017, USCIS

showed favoritism to one Regional Center's politically connected commercial enterprise, Tryon International Equestrian Center, by granting "expedited processing" to petitions associated with that business's investment project. Bega J.A. 26-28 (Compl. ¶¶ 146-57). Bega alleges that USCIS gave that special treatment because of the Tryon CEO's political donations. Bega J.A. 26 (Compl. ¶¶ 148-50). Bega seeks to bolster that allegation with an undated USCIS email acknowledging that, in April 2017, USCIS granted expedited processing for one project, Bega J.A. 203, along with USCIS emails from 2019 and 2020 discussing the litigation risk associated with that undated email, Bega J.A. 204-06.

Those suggestions of special treatment for politically connected petitioners in 2017 and the 2015 Inspector General report of political influence do not support a reasonable inference that USCIS has unreasonably delayed adjudicating Bega's 2019 petition. Taking his allegations as true, Bega's complaint suggests that USCIS has departed on occasion from granting available EB-5 visas in priority-date order, but the complaint does not tie that past misconduct, which allegedly occurred well before Bega even filed his petition, to delayed processing of his petition. Bega has not raised a reasonable inference that USCIS currently is following a processing system other than its official policy.

Third, the Da Costas allege that "[f]our-and-one-half years to process an immigration petition is *per se* unreasonable." Da Costa App. 26 (First Am. Compl. ¶ 140). The wait is undoubtedly maddening. The processing time for EB-5 petitions is long, and has been increasing over time, as USCIS's public statistics show. USCIS*, Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year: Fiscal Year 2018 to 2023 (up to April 30, 2023)*. But courts' narrow role in reviewing agency delays

allows a claim to proceed only if the delay is unreasonable within the meaning of the APA. Here, the length of the wait alone is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications. The period that Plaintiffs' petitions have been pending includes both the nine-month pause in statutory authorization and the serious practical challenges posed by a global pandemic. Considering those obstacles together with the competing demands on the agency, we cannot say as a matter of law that the processing time itself establishes that USCIS lacks a rule of reason.

The factors in addition to the elapsed time that we have considered when evaluating the agency's rule of reason—"the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102—do not favor the Plaintiffs. Adjudication of a Form I-526 petition may well be simpler than completion of the tribal recognition process in *Mashpee Wampanoag Tribal Council*, *id.* at 1100, but the same principle we recognized in that case applies with full force here: When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay. *See id.* at 1100, 1102. Here, the steps that USCIS took to improve its efficiency in adjudicating Form I-526 petitions by harmonizing the statutory visa caps with the statutory directive to process petitions in the order in which they are filed undercut the plausibility of Plaintiffs' claims.

In sum, *TRAC* factor one—whether the timing of the challenged agency action is governed by a rule of reason—weighs in favor of USCIS. USCIS's availability-screened queue harmonizes the INA's priority principle with its per-country limits, 8 U.S.C. §§ 1152(a)(2), 1153(e)(1), and Plaintiffs concede that the system "makes sense," Oral Arg. Tr.

18. Plaintiffs did not plausibly plead that USCIS, whether in policy or practice, employs a different system. USCIS's current approach to sequencing the adjudication of Form I-526 petitions follows a rule of reason as *TRAC* requires.

**2.**

*TRAC* factor four, the effect on competing agency priorities, strongly disfavors the Plaintiffs here. When analyzing this factor, we "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. For guidance in considering competing agency priorities, we look to *In re Barr Laboratories*, 930 F.2d 72 (D.C. Cir. 1991), where we reviewed a challenge to the Food and Drug Administration's failure to adjudicate a generic drug application. *Id.* at 73. Even though the agency missed a statutory deadline, we held that the *TRAC* factors favored the government because of the strength of factor four. *Id.* at 76. "[A] judicial order putting" one company's generic drug application "at the head of the queue simply moves all others back one space and produces no net gain." *Id.* at 75.

Because USCIS prioritizes adjudication based on the date a petition was filed, 8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d), a court order requiring USCIS to adjudicate the Plaintiffs' Form I-526 petitions would move them ahead of longer-pending petitions. Indeed, litigation by other Form I-526 petitioners has caused some line jumping. Plaintiffs in another lawsuit challenging the pace of EB-5 visa adjudications sought to question whether USCIS followed a rule of reason by pointing to examples of petitions processed out of filing order, but ultimately "conceded that this 'expedited' treatment was the result of litigation efforts on behalf of other plaintiffs in other actions." *Jain v. Renaud*, No. 21-cv-03115, 2021 WL

2458356, at *5 (N.D. Cal. June 16, 2021). In the absence of plausible allegations that USCIS is not applying its rule of reason, moving Plaintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog.

Plaintiffs' argument that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works. The Da Costas and Bega assert that, "[b]ecause USCIS can adjudicate dozens (if not more) Forms I-526 at the same time, this factor does not favor USCIS in the same way it would if USCIS could only adjudicate them one at a time consecutively." Da Costa App. 33 (First Am. Compl. ¶ 188); Bega J.A. 19 (Compl. ¶ 112). Bega takes that claim one step further, alleging that "there is no 'line'" because "USCIS has a pool of Form I-526 petitions and it pulls them out as it sees fit, when it sees fit, and decides them in an arbitrary order." Bega J.A. 19 (Compl. ¶ 108). These allegations fall short. For the reasons already explained, *see supra* Discussion B.1, Plaintiffs' allegations do not describe USCIS using a system other than its publicly announced availability-screened queue. USCIS does have a "line": petitions with available visas, processed in filing order by priority date. Plaintiffs do not allege that they were singled out for slower adjudication; plausible allegations to that effect might have alleviated the line-jumping concern. *See In re Barr Lab'ys*, 930 F.2d at 75-76. Instead, Plaintiffs appear similarly situated to all other Form I-526 petitioners who are waiting for USCIS to clear its petition backlog.

Plaintiffs seek individual, not systemic, relief. Both sets of Plaintiffs request "an order compelling USCIS" to "[a]djudicate [their] Form I-526 [petitions] within 14 days," to process any additional responses to a Request for Information within 7 days, and to "[f]orward any approval to the National

Visa Center [to begin consular processing] within 3 days." Bega J.A. 29 (Compl. ¶ 173); Da Costa App. 35 (First Am. Compl. Prayer for Relief). Granting this individual relief would necessarily come "at the expense of other similarly situated applicants," unlike "broader relief" that would avoid "line-jumping" concerns. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). Plaintiffs do not, for example, challenge agency guidance governing Form I-526 adjudications. *See, e.g.*, *Almaqrami v. Pompeo*, 933 F.3d 774, 777, 783 (D.C. Cir. 2019) (considering a challenge to a State Department guidance memo "instructing consular officers reviewing diversity visa applications" how to implement an entry ban). "While judicial intervention could assist" the Plaintiffs, "it would likely impose offsetting burdens on equally worthy" EB-5 visa petitioners who are "equally wronged by the agency's delay." *See In re Barr Lab'ys*, 930 F.2d at 73.

We do not make light of the troubling backlog of petitions waiting for USCIS adjudication, nor does the increasingly sluggish pace of adjudication escape our attention. Those problems are serious. But Plaintiffs' failure to plausibly allege that USCIS operates without a rule of reason, together with the effect that their requested relief would have on the queue of petitioners waiting ahead of the Plaintiffs, weighs against judicial intervention to expedite adjudication of Plaintiffs' petitions.

**3.**

Plaintiffs' arguments regarding the remaining *TRAC* factors do not tip the scales in their favor. For *TRAC* factor two, we consider whether Congress set a deadline for agency action. *TRAC*, 750 F.2d at 80. Plaintiffs argue this factor favors them because in 2000, in a bill amending the INA,

lawmakers expressed "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)). Plaintiffs allege that, "[w]hile not mandatory, § 1571(b) certainly provides a benchmark for 'reasonableness' for immigrant visa petitions." Da Costa App. 29 (First Am. Compl. ¶ 160); Bega J.A. 14 (Compl. ¶ 78).

We agree that, even though the language is insufficient to set a deadline, we can look to Congress's aspirational statement as "a ruler against which the [agency's] progress must be measured." *See In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020). This factor somewhat favors Plaintiffs, as they have waited longer than 180 days. But the delay has not reached the level of disproportionality we have previously held sufficient to grant relief. *See, e.g.*, *id.* at 273-74.

The harm to Plaintiffs from the waiting time is also insufficient to outweigh the factors weighing in favor of dismissal. *TRAC* factors three and five apply similarly here, so we consider them together. For factor three, "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Factor five is a broader version of the same idea: "[T]he court should also take into account the nature and extent of the interests prejudiced by delay." *Id.*

Bega alleges financial harm: "[T]he unknown timelines and uncertainties prevent[s] [him] from planning, selling assets at opportune times, and making arrangements for [his] famil[y]." Bega J.A. 16 (Compl. ¶ 91). He also alleges that the

requirement to keep his capital continuously invested until he qualifies for unconditional lawful permanent residency exacerbates his financial risk. Bega alleges that, because of the time he has been waiting, the project in which he originally invested is complete and the Regional Center is authorized to "'re-deploy' [his] investment into a new project," which might be a "riskier venture." Bega J.A. 16 (Compl. ¶ 92). The financial harms Bega alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in his favor.

The Da Costas allege health and welfare harms, but their allegations are generalized to the population of the city where they live, not tied to their individual circumstances or the EB-5 petition process. The Da Costas allege that their home city, Durban, South Africa, has faced "prolonged periods [of] riots," flooding, and inconsistent access to government-provided electricity and water. Da Costa App. 17 (First Am. Compl. ¶¶ 79-84). Many residents of Durban cannot access "basic necessities, food, water, and shelter." Da Costa App. 17 (Compl. ¶ 85). The Da Costas allege that "a visa petition approval would allow Plaintiffs to leave a home ravaged by civil unrest and natural disaster." Da Costa App. 30 (Compl. ¶ 169).

Like any EB-5 petitioner seeking to immigrate, the Da Costas undoubtedly place importance on their ability to obtain a visa petition. But their allegations do not specifically link their personal circumstances to conditions in Durban; they do not, for example, allege that they are unable to access electricity, water, food, or shelter. Without allegations linking the delayed adjudication of their petition to health or welfare harms, *TRAC* factors three and five do not favor them.

24

The Da Costas nonetheless argue that this court should follow the Sixth Circuit's decision in *Barrios Garcia v. DHS*, 25 F.4th 430 (6th Cir. 2022), to hold *TRAC* factors three and five alone sufficient to reverse the district court's judgment of dismissal. In *Barrios Garcia*, the Sixth Circuit held that plaintiffs who had applied for visas and authorization to work stated a claim for unreasonable delay of their placement on the waitlist for U-visas, a special category of visa for "noncitizen victims of serious crimes who cooperate with law enforcement." 25 F.4th at 436, 455. The plaintiffs alleged that, while living in the United States awaiting their visas, they were unable to "obtain a social-security number or identification cards," to "garner healthcare, car insurance, or lawful employment," or to "lawfully travel to and from the United States." *Id.* at 452. They also were unable to seek deferred action while they awaited their authorization, leaving them at risk of deportation. *Id.* Assessing those allegations, the Sixth Circuit held that, "based on [the] factual allegations [about harm to health and welfare] alone," the plaintiffs "sufficiently alleged that USCIS has unreasonably delayed deciding whether to place principal petitioners on the U-visa waitlist." *Id.* *Barrios Garcia* is inapposite here because Plaintiffs' complaints lack the kind of allegations of harm that supported relief in that case.

The final consideration—*TRAC* factor six—is neutral here. For factor six, the court considers whether there is "any impropriety lurking behind agency lassitude," although it need not find any "in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984)). Here, Bega alleges that the government engaged in impropriety because USCIS expedited petitions associated with the Tryon International Equestrian Center's investment project, the previous administration cut resources

for visa adjudications, and USCIS "artificially inflate[s]" its reports of processing times "to create a potential defense against lawsuits. Bega J.A. 25-28 (Compl. ¶¶ 142-57). The Da Costas offer a more general allegation that USCIS has "accorded significant [processing time] benefits to certain projects," which, although unclear, appears to be a reference to the Tryon International Equestrian Center allegations. Da Costa 34 (First Am. Compl. ¶ 193).

For the reasons already explained, *see supra* Discussion B.1, Plaintiffs' claims about isolated incidents of assertedly improper expediting in 2015 and 2017 do not plausibly allege government misconduct. Assuming the truth of Plaintiffs' allegations of resource cuts, such cuts would not show government impropriety. The allegation about fraudulently inflated processing times is conclusory and implausible.

In sum, Plaintiffs do not state a claim of unreasonable delay. The availability-screened queue is a rule of reason, and the complaints do not allege that USCIS follows a process other than its officially stated policy. Ruling in favor of Plaintiffs would require USCIS to process Plaintiffs' petitions ahead of those of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated. Congress did not set a deadline for agency action, Plaintiffs allege primarily financial harm, and the allegations do not point to government impropriety. We therefore affirm the dismissals of Plaintiffs' complaints.

## C.

The shortcomings in Plaintiffs' complaints do not excuse the persistent lack of clarity in USCIS's official disclosures about the EB-5 program, and in its counsel's advocacy in this court. At oral argument, government counsel was unable to describe how the USCIS petition processing system works. *See*

Oral Arg. Tr. 43-49. After counsel appeared on behalf of the State Department before us in *Meina Xie* seven years ago, we noted similar problems: Government counsel was "distinctly obscure about the interaction of" the relevant statutory provisions and, at oral argument, was unable to point to any "elucidating regulations." *Meina Xie*, 780 F.3d at 406-07. We observe here, as we did there, that the advocacy on appeal fell short of the high standards we expect from counsel for the United States. We trust the government will take the requisite steps to ensure that its future advocacy on behalf of USCIS is appropriately clear and informed.

\* \* \*

For the foregoing reasons, we affirm the district court judgments dismissing Plaintiffs' claims.

*So ordered.*